THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TED MOORE, Defendant-Appellant.

Second District   No. 77-327

Opinion filed November 2, 1978.

Raymond M. Carlson, of Rosing & Carlson, Ltd., of Waukegan, for appellant.

William J. Scott, Attorney General, of Chicago, and Dennis Ryan, State's Attorney, of Waukegan (Stuart Opdycke, Donald B. Mackay, and Melbourne A. Noel, Jr., Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Following a joint jury trial in Lake County with co-defendant, Morris Friedman (whose appeal is also disposed of this date in an opinion filed in this court in Case No. 77-343), the defendant, Ted Moore, was found guilty of 1 count of conspiracy and 10 counts of theft by deception in excess of $150. The defendant was sentenced to concurrent 3 1/3- to 10-year terms for each of the above offenses.

On appeal the defendant raises the following issues: (1) Whether the defendant was proved guilty beyond a reasonable doubt; (2) Whether the admission into evidence of certain statements attributable to co-defendant, Friedman, violated the *Bruton* rule; (3) Whether the trial court's refusal to grant a severance was an abuse of discretion; (4) Whether the trial court erroneously refused to grant defendant's motion for mistrial; (5) Whether the trial court's determination that a conviction of the defendant was admissible was an abuse of discretion; and (6) Whether the defendant's sentence was excessive.

Prior to reaching these issues we must first consider defendant's contention in his supplemental brief. In this brief, filed subsequent to the First District's opinion in *People v. Massarella* (1977), 53 Ill. App. 3d 774, 368 N.E.2d 507, the defendant contends his indictment should be dismissed or alternatively the case should be reversed and remanded for a new trial because his indictment and conviction were obtained pursuant to the activity of the Attorney General who defendant avers had exceeded his statutory and common law authority in presenting the case to the grand jury and prosecuting the case at trial. In *People v. Massarella* (1977), 53 Ill. App. 3d 774, the First District of this court held that where the Attorney General, through his assistants, presents a matter to the grand jury and prosecutes a case at trial unaccompanied by the State's Attorney and where all the State's Attorney's actions are at most ministerial, the Attorney General's actions are improper and beyond his authority and require the dismissal of the defendant's indictment. However, while this appeal was pending, the supreme court reversed the First District and clarified this question of the statutory and common law powers of the Attorney General in *People v. Massarella* (1978), 72 Ill. 2d 531, 538-39, 382 N.E.2d 262, wherein the court stated that "the Attorney General may assist the State's Attorney to the extent that he may discharge all those powers of the State's Attorney at all stages in a prosecution,

including the preliminary proceedings such as presentations to a grand jury, where the latter does not object."

■■ It would unduly prolong this opinion to reiterate the entire rationale posited by the supreme court in *People v. Massarella* relevant to the statutory interpretation of the Attorney General's authority. It is sufficient to note that we believe that under *People v. Massarella*, the State's Attorney's statements in the instant case that "the Attorney General is *cooperating* with the State's Attorney of Lake County for the purpose of seeking an indictment against the seven named individuals * * *" (emphasis added), as well as his acknowledgement that "the questions will be asked by the Assistant Attorney General who will *cooperate* with me in this case for prosecution in Lake County, Illinois" (emphasis added), clearly indicate that the State's Attorney did not object to the Attorney General's assistance in the discharge of the State's Attorney's own powers both before the grand jury and at trial. Accordingly, we must conclude that the Attorney General was at all times within the scope of his statutory duties because the record does not show an objection by the State's Attorney to the Attorney General's participation either before the grand jury or at trial, nor, in fact, any effort by the State's Attorney to exclude him from these proceedings.

The present case involves the sale of distributorships to purchasers, hereinafter referred to as investors, by the defendant, who represented himself to be both a salesman and a vice-president of various companies—the primary ones being the Candy Merchandising Council of America (hereinafter CMCA), Plantation Candyland, Diversified Marketing and Diversified Electronics. These companies were located in Lake Zurich, Illinois, and were in operation during the years 1973 through 1975.

At trial, 11 witnesses testified that each had responded to an advertisement in the newspaper and were subsequently called upon personally by the defendant. At this time the defendant would inform the investors that for $6,500 to $13,000 they could purchase a distributorship for candy or tape cassettes from one of the aforementioned companies. The investors then signed written contracts which promised that the marketing department of the various companies would obtain retail display locations for the placement of the candy or the tapes. The number of locations or accounts varied between 10-30, depending on the initial investment. Thereafter, the investors, within a couple weeks, would receive approximately $1,500 worth of candy or $700 worth of tapes, depending on the particular distributorship plan for which they had contracted. According to the defendant, the rest of their investment would be credited to their initial investment at the rate of 10 percent of

each additional order. The defendant's other written or oral representations consisted of the following: (1) That the accounts or locations would be of the high-volume, high traffic accounts such as Walgreens, Jewel or A & P; (2) That the investors would make $1,000 per year on each account or location; (3) That the companies would furnish specialists who would set up the accounts at the high-volume stores; (4) That, upon request, a refund of their investment would be forthcoming to the investor, subject to adjustment for bills outstanding; and (5) That the references given by the defendant to the investors were other successful business people involved in this line of sales with these companies.

According to the investors at trial, what really happened is that sometimes no one came in to assist in securing these accounts or the actual assistance was, at best, minimal, and the accounts that were obtained were of the low-volume variety such as five tables at the local florist—which was considered five accounts by the companies. All the investors testified that their distributorships lost money and only a few of them even sold their initial shipment of candy or tapes. Further, none of the investors' attempts at obtaining a refund of their money was successful. Similarly, the investors' efforts to locate the defendant and inform him of their difficulties all met with no success. Additionally, there was testimony that at least one phone reference given to the investors by the defendant in the name of Michael Stevens, who was supposedly a prosperous distributor, was, in fact, the telephone number of the defendant himself. Finally, there was testimony from an investigator of the Attorney General's office who analyzed the numerous companies and stated that $1,737,000 went through the companies' accounts and $99,000 was disbursed to the defendant.

Following the presentation of the State's case in chief, the trial court granted the State's motion to dismiss eight counts against the defendant and co-defendant. The defendant's remaining 10 counts of theft by deception and 1 count of conspiracy went to the jury, and the jury found the defendant guilty on all counts.

The defendant contends first on appeal that the evidence failed to prove his guilt beyond a reasonable doubt. The defense argues that the State failed to show that the defendant had the requisite knowledge of what was actually taking place in this business to sustain his conviction for theft by deception.

The requisite knowledge necessary to establish the defendant's intent to commit theft by deception is set forth by section 15—4(e) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 15—4(e)), which states that:

" * * * 'deception' means knowingly to:
* * *

(e) Promise performance which the offender does not intend to

perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform."

The evidentiary requirement of this particular statute was recently restated by this court in *People v. Ballard* (Docket No. 76-565, Oct. 20, 1978), ___ Ill. App. 3d ___, ___ N.E.2d ___, wherein the court stated that:

"Specific intent to defraud need not be proved by direct evidence but may be proved by the surrounding facts and circumstances; further the factual issues are for the jury to determine and the jury's finding will not be disturbed unless the proof does not meet the requirements of the law. (*People v. Warren* (1971), 2 Ill. App. 3d 983, 276 N.E.2d 92.)" (___ Ill. App. 3d ___.)

In *Ballard*, this court in upholding the defendants' convictions for theft by deception found that the testimony of the 12 complaining witnesses was sufficient to show that the defendants did not even attempt to honor their promises to investors concerning the quality of the merchandise and locations which were to be furnished and that "the failure of the defendants' enterprise came not from over enthusiasm or business 'naivete', but that the promises made were never intended to be fulfilled." ___ Ill. App. 3d ___, ___.

■■ In the present case, the evidence as previously set forth conclusively establishes that the defendant's acts and intent throughout were to deceive members of the public into investing in a distributorship business which was largely a sham. The defendant induced these individuals to invest in a candy or tape distributorship which the defendant knew or must have known was completely devoid of value. The defendant represented to these victims that the types of sales locations they would have were of the high-volume variety such as supermarkets or drugstores when, in fact, the locations would be at the local florist or worse; that the investment had a money-back guarantee when, in fact, all the victims testified they never received their money back; that other investors and references were making good money on this investment when, in fact, the other investors were being duped and a reference in at least one instance was, in fact, the defendant himself; that marketing assistance for these products would be supplied by the home office when, in fact, minimal, if any, help was forthcoming; and, finally, that the defendant did not make any attempt to honor his promises to the investors either as a salesman or as a vice-president of this company. From all these circumstances it is very easy to infer that the defendant never had any intent to fulfill the various promises and that the failure of these investments came not from poor business management or an increase in the price of candy, but from the obvious intent of the defendant and other members of this company to defraud the public by this scheme. Therefore, we hold that there was

sufficient evidence to find the defendant guilty beyond a reasonable doubt.

Defendant contends next on appeal that the introduction of certain of the co-defendant's statements, which implicated the defendant, violated his right to confrontation under the United States Supreme Court ruling in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, because the co-defendant herein was not subject to cross-examination at trial since he did not testify. Defendant further avers that the trial court committed reversible error in admitting these statements and that the prejudice to his case was not alleviated by the court's instructions which limited the admission of these statements to the co-defendant.

The Supreme Court in *Bruton* held that the out-of-court statement by one co-defendant which implicated a second co-defendant was inadmissible in a joint trial because it violated the second co-defendant's right of confrontation under the sixth amendment, where the co-defendant who made the statement was not subject to cross-examination at trial because he did not testify. The Illinois courts have also held, however, that "no violation of the *Bruton* rule occurs when the defendant claiming the benefit of the rule has himself made a similar inculpatory admission which is admitted into evidence. (*People v. Rosochacki,* 41 Ill. 2d 483, 244 N.E.2d 136; *People v. Bassett,* 56 Ill. 2d 285, 307 N.E.2d 359; *People v. Harper.*)" *People v. Delk* (1976), 36 Ill. App. 3d 1027, 1036-37, 345 N.E.2d 197, 205.

■■■ In the instant case, the defendant objects to admitted testimony by certain witnesses who testified that the co-defendant was a front man for the organization or "Mafia"; that the co-defendant "had * * * other people fronting for him" who "were netting 65 percent, which is somewhere around $96,000"; that the co-defendant was quoted at trial as having told one witness "that they made about two and a half million dollars and also stated that Moore made about 120—." Additionally, the co-defendant's response to an investor's request for a return of his investment was described in the following manner:

> "Well, at that time he opened his desk drawer, he pulled a revolver out, and laid it on the table, and he just sat there, and he fingered that revolver, and he said, 'There will be no buy-back,' and that's the way he said it."

Initially, we note that none of the above statements were particularly favorable to the defendant's case. However, we do not believe the above testimony was any more prejudicial or inculpatory to defendant's cause than numerous other statements attributable to the defendant and admitted at trial, which conclusively established that the defendant's

actions were not those of an everyday salesman or entrepreneur but the actions of an individual out to bilk the life savings of countless gullible people. Throughout the trial, on many occasions, there was testimony from many witnesses who were deliberately misinformed and inveigled by the defendant concerning this business venture. Typical of defendant's assurances was his statement to one of the witnesses "that Butkus, the football star, would be advertising" for these products. Therefore, in light of the defendant's own damaging, inculpatory admissions in evidence, we find that the defendant's right to confront his co-defendant concerning the aforementioned statements was not violated. However, even if we should find that it was error for the trial court to admit these statements of the co-defendant, the error was harmless beyond a reasonable doubt in light of the overwhelming nature of the evidence against the defendant by which the jury could easily find the defendant guilty without undue reference to the co-defendant's statements, especially where, as here, the trial court instructed the jury to limit the admission of these statements to the co-defendant.

The defendant next argues that the court erroneously denied his motion for severance which was made on several occasions during trial and renewed in his post-trial motion.

■■ ■ It is axiomatic that co-defendants should be tried jointly together unless their defenses are so antagonistic that a severance must be granted to insure the defendants of a fair trial. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326; *People v. Brown* (1975), 27 Ill. App. 3d 569, 327 N.E.2d 51.) In order for the trial court to grant a severance to defendants because of antagonistic defenses, the defendants must demonstrate more than the mere apprehension that their defenses conflict (*People v. Nickson* (1978), 58 Ill. App. 3d 470, 374 N.E.2d 804), but that one or more of the co-defendants will testify, implicating the other (*People v. Precup* (1977), 50 Ill. App. 3d 23, 365 N.E.2d 1007). Additionally, the power to grant a severance is discretionary with the trial court and will not be overturned on review unless there has been a clear abuse of discretion. (*People v. McNeal* (1977), 56 Ill. App. 3d 132, 371 N.E.2d 926.) In conspiracy cases in particular, the courts have found that as a general rule, individuals jointly indicted should be tried together and a severance should be denied absent a demonstration of the most compelling prejudice. (*United States v. Kelly* (5th Cir. 1978), 569 F.2d 928.) The courts have also stated that where there was an overall scheme implicating the defendants, the severance motion should be denied. *United States v. Serlin* (7th Cir. 1976), 538 F.2d 737.

■■ In the instant case, the defendant was charged and convicted of 1 count of conspiracy and 10 counts of theft by deception in excess of

$150—all of which were crimes which were committed by the defendant in an overall plan to deceive various individuals. Neither the defendant nor the co-defendant testified at trial nor, in fact, presented testimony that *directly* implicated the other. In his pretrial motion for severance, the defendant averred that the co-defendant (Friedman), Joan Jagoditch and Lawrence Gold, as well as the defendant, may testify concerning their knowledge of the company's inability to honor its contracts and promises. The trial court in its discretion severed Jagoditch and Gold from the co-defendant and defendant, but specifically found as to the defendant's motion that:

> "* * * I would deny his motion for severance, and state the reason for that is, he is simply named in too many counts as one of the conspirators. It is represented he has signed things as vice president. * * * That keeps him in, and I think it keeps him in in a number of counts.
>
> * * *
>
> [T]herefore I feel in as much as he is named in so many counts, the main thing I want to try to say, * * * , is I do not find there is any antagonistic defenses."

We have reviewed the entire record and find that the trial court did not abuse its discretion in denying the defendant's pretrial motion for severance where his petition as to the co-defendant merely raised an apprehension that either defendant might incriminate the other. We also find that the trial court did not abuse its discretion in denying defendant's numerous other motions for severance. We further find that any prejudice in the admission of some of these statements was at best harmless error in light of the overwhelming testimony which established the defendant's guilt beyond a reasonable doubt.

Defendant next argues that the trial court should have granted his motion for a mistrial because of the testimony of Lawrence Gold, who asserted that various salesmen (and not specifically the defendant) were making promises that they could not possibly deliver on in regard to sales locations and the price of candy. The jury was again instructed to disregard these statements as to the defendant, but the defense nevertheless claims he was irreparably prejudiced by this testimony.

■■ Generally, a trial judge should in his discretion "declare a mistrial if an impartial verdict cannot be reached." (*Illinois v. Somerville* (1973), 410 U.S. 458, 464, 35 L. Ed. 2d 415, 431, 93 S. Ct. 1066, 1070.) In this case, the trial was far from perfect, but it also was not so tainted as to deprive the defendant of a fair and impartial jury trial. The trial court at all times properly instructed the jury to limit the evidence to one defendant or the other, and none of the limited evidence was so prejudicial to the

defendant as to warrant a declaration of a mistrial. Accordingly, the trial court properly denied defendant's motion for a mistrial.

Defendant argues next that the trial court abused its discretion when it determined that the defendant's 1975 conviction in Florida for grand larceny involving sales for the Candy Merchandising Council of America could be used to impeach his testimony if he should testify. Defendant contends that this conviction should not be admissible because it is for the same conduct with which he is charged in the instant case.

■■ The well-established rule in regard to the admissibility of prior crimes to attack credibility was set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, wherein the court held that for the purpose of attacking the credibility of a witness, evidence that he had been convicted of a crime was admissible if the court determined that the probative value of the evidence of the crime substantially outweighed the danger of unfair prejudice. In regard to the admissibility of a prior conviction for the same conduct for which the defendant is on trial, Circuit Judge, now Chief Justice Burger, stated it thusly in *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, 940:

> "As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.
>
> Of course, there are many other factors that may be relevant in deciding whether or not to exclude prior convictions in a particular case. See *Luck, supra* at 157, 348 F.2d at 769."

In the instant case, in ruling that the defendant's prior conviction would be admissible if the defendant chose to testify, the court noted the following:

> "* * * I feel that the criteria of the Montgomery case is satisfied, * * *, it is a similar offense, and I do not feel that the prejudicial effect would outweigh it's [*sic*] probative value. In addition to that, under the Illinois law, the defendant could well alleviate most of the problem by simply, in direct testimony, I am not saying he is under a duty to do this, but certainly if he was worried about it, you could ask him if he has ever been convicted of a felony in the State of Florida, or something like that. If he said yes, that would end it, the jury would never know what that was, so the similarity of the situations would go by the board. However, based primarily on the Montgomery case, I will deny the motion."

We believe the trial court's above discourse clearly demonstrates that it

carefully weighed all the facts of this particular situation before determining that defendant's prior conviction would be admissible. Therefore, under the circumstances presented here, we hold that the trial court's denial of defendant's motion to exclude any reference to his prior conviction was not an abuse of discretion, especially where the admission of this prior offense directly related to the defendant's veracity and any similarity between the prior offense and the present charges could have been properly excluded from the jury.

Defendant's final contention is that his sentence of 3 1/3 to 10 years is excessive and unwarranted. Defendant argues that such a sentence disregards his rehabilitative potential and his efforts to make restitution in regard to a 1975 Florida conviction as well as posing a severe threat to his health. We disagree.

■■ It is well established that a trial court's exercise of sound judicial discretion in imposing sentence will not be disturbed on appeal absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

The trial court herein gave serious consideration to the defendant's health problems at the time of sentencing. These problems of health had not interfered in any way with the defendant's dubious criminal and business activities. Additionally, the defendant had two prior convictions, one of which was for similar conduct for which he was convicted here. Accordingly, after a review of the nature and extent of these offenses, the defendant's health and rehabilitative potential, we find nothing in the record to indicate that the trial court abused its sound judicial discretion in imposing sentence on the defendant.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.