THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD R. CART *et al.*, Defendants-Appellants.

Second District    Nos. 80-390, 80-467 cons.

Opinion filed December 2, 1981.

174

176

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, and Jed H. Stone, of Waukegan, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendants, Richard Cart and Michael Casamassina, were jointly tried by jury and convicted of conspiracy to commit murder; they were each thereafter sentenced to seven years imprisonment. We have consolidated their separate appeals for opinion.

Defendants each contend on appeal that: (1) the court should have severed their cases for trial; (2) his sixth amendment right to confront witnesses was abridged when each defendant's statement inculpating the other was admitted in evidence; (3) they were denied a fair trial when the court failed to conduct a hearing to determine whether prejudice resulted when a juror was telephoned by a court bailiff; and (4) the State failed to prove their guilt beyond a reasonable doubt. Cart additionally contends his statements to police should have been suppressed on grounds he was arrested without probable cause and questioned before being given *Miranda* warnings, and, that his co-defendant's admissions should have been excluded from evidence on grounds they were hearsay. Casamassina assigns as further error prejudicial closing argument by the State.

Defendants were indicted together with David Quinn and Ruth Cohn for conspiracy to murder Mrs. Cohn's estranged husband, Stuart Cohn. The primary evidence introduced in trial against each defendant consisted of the admissions each made to investigating officers regarding the roles they had played directed toward the killing of Stuart Cohn at the request of his wife. Casamassina gave recorded statements to officers in which he related that Mrs. Cohn, with whom he had become acquainted while doing repair work on the Cohn home, told him she wanted her husband dead and asked whether he could arrange it. Casamassina informed her he could do so, and they discussed injecting Mr. Cohn with an animal euthanasia solution and also blowing up his car by pouring an iodine preparation into the battery of his car. In his statement Casamassina related that in these discussions she informed him of her willingness to pay almost anything to have her husband killed. Casamassina then called co-defendant Cart, who is his half-brother and then lived in Pennsylvania, with Mrs. Cohn present. He advised Cart that someone wanted a killing, Cart responded it would cost $5,000 plus expenses for plane fare for two people. The next day Mrs. Cohn gave Casamassina $5,300 in cash, $300 of which he sent to Cart for plane fare. Cart thereafter came to Highland Park, Illinois, with defendant David Quinn, and they stayed at Casamassina's house. Most of the remaining $5,000 was given to Cart by Casamassina, who acquired a rifle with a scope, a handgun, knives and ammunition. The men also assembled material for use in a pipe bomb. On the evening of December 5, 1979, the three men went to the Cohn home, and Cart entered it while Casamassina and Quinn watched from the street. After Cart entered the house the other two became uneasy when they saw a police car and left the scene, returning home. Shortly thereafter Casamassina received a telephone call from Cart telling him to bring the gun to the Deerfield police station and he did so.

Cart's recorded statements to police were also admitted in evidence. In them he stated he received telephone calls from his brother, Casamassina, who inquired whether he or anyone he knew would be interested in killing someone. Cart related that when he learned the price was $5,000 and expenses up front he became interested. Cart recruited David Quinn, offering him $300, and after receiving plane fare from Casamassina by Western Union the two men flew to Illinois. Casamassina gave Cart $4300 at the airport and he subsequently talked to Mrs. Cohn on the telephone and discussed possible methods of killing Mr. Cohn. Mrs. Cohn also agreed to pay any of his additional expenses incurred and stated to him she wished the death to look like an accident because of a double indemnity insurance policy. The men purchased a .25-caliber automatic pistol for $200, and Quinn furnished a rifle; Cart also purchased a CB

radio and walkie-talkie. The men also demanded an additional $2500 which Mrs. Cohn agreed to pay. In his statements Cart related that he drove over to the Cohn home on the evening of December 5 with Casamassina and Quinn following in another automobile. Cart then had the pistol and the others had the rifle in their car and they used the walkie-talkies to keep in communication. In relating these matters to the police, Cart denied that he had any actual intent to murder Mr. Cohn but that his efforts which appeared to be so directed were intended only as a "scam" in order to get money from the Cohns. He also stated that neither Casamassina nor Quinn were aware of his real purpose and that he was simply leading them on.

Evidence was also introduced in trial that Mr. Cohn had received a telephone call on December 5 and the unidentified caller (Cart) said he had tapes of conversations with Mrs. Cohn for which Mr. Cohn would reward him. Mr. Cohn was interested as he believed the tapes were related to their pending divorce action, but he was also fearful because his wife had made an attack on his life the previous year. Mr. Cohn called the police and two officers were waiting inside the door when Cart arrived at 9 that evening. The armed officers identified themselves to Cart and frisked him, finding he carried no weapons. Cart identified himself by another name, which the officers could not verify, and they then inquired why he was at the Cohn home. Cart responded, at some length, that he knew of a plot to kill Mr. Cohn after overhearing a conversation and could locate the gun which was to be used and turn it over to the officers. Cart made a phone call, and Casamassina subsequently brought a pistol to the police station in a paper bag.

Cart accompanied the officers to the police station and both defendants were formally placed under arrest and advised of their *Miranda* rights, thereafter giving the statements to the officers to which we have referred. In a search of Casamassina's house, to which he consented, the officers recovered a rifle, knives, iodine, syringes and an euthanasia solution. Casamassina cooperated with the officers and obtained an additional payment from Mrs. Cohn, who was then also arrested. The cases of Mrs. Cohn and Quinn were severed for trial, with each later entering a plea of guilty to the offense of conspiracy to commit murder. See *People v. Cohn* (1980), 91 Ill. App. 3d 209, 414 N.E.2d 543.

Neither defendant testified at trial. Cart presented no evidence, and Casamassina offered evidence that while in the county jail he had been given aspirin and thorazine daily. A psychiatric report of an examination of Casamassina was admitted in evidence which stated he was able to appreciate right from wrong but had an impairment of functional judgment.

I

We consider first defendants' contentions that the court erred in denying their motions to sever their cases for trial.

■■■ In considering the decision of a trial court denying severance, a reviewing court will look only to the petitions filed by defendants and the matters alleged therein and not to the subsequent happenings at trial. (*People v. Yonder* (1969), 44 Ill. 2d 376, 386, 256 N.E.2d 321, 327, *cert. denied sub nom. Guido v. Illinois* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094; *People v. Brophy* (1981), 96 Ill. App. 3d 936, 945, 422 N.E.2d 158, 166.) While the written petitions filed by defendants do not appear in the record, it is apparent from the transcript of the hearing held on their motions that the trial court was apprised of the grounds upon which they were asserted, thus preserving them for appeal. *People v. Powell* (1981), 95 Ill. App. 3d 93, 98, 419 N.E.2d 708, 712; *People v. Jones* (1980), 81 Ill. App. 3d 724, 728, 401 N.E.2d 1325, 1328.

■■■ It is the general rule that jointly indicted co-defendants should be tried together unless circumstances exist requiring that their cases be severed to insure each defendant a fair trial. (*E.g., People v. Lindsay* (1952), 412 Ill. 472, 107 N.E.2d 614.) This rule has been particularly adhered to in conspiracy cases, absent a specific demonstration of the most compelling prejudice and a clear abuse of discretion by the trial court in denying a severance. (*People v. Moore* (1978), 65 Ill. App. 3d 712, 719, 382 N.E.2d 810, 816, *cert. denied* (1980), 444 U.S. 1043, 62 L. Ed. 2d 729, 100 S. Ct. 729.) In general, severance should be granted where the defendants make a specific showing they have truly conflicting and antagonistic defenses marked by opposition, hostility, antipathy or discord (*People v. Lee* (1981), 87 Ill. 2d 182, 188; *People v. Davis* (1976), 43 Ill. App. 3d 603, 610, 357 N.E.2d 96, 101-02, *appeal denied* (1977), 65 Ill. 2d 578); mere apprehensions that the defenses may prove conflicting are insufficient. (*People v. Murphy* (1981), 93 Ill. App. 3d 606, 609, 417 N.E.2d 759, 761; *People v. Nickson* (1978), 58 Ill. App. 3d 470, 482, 374 N.E.2d 804, 812.) However, when a motion for a separate trial is based on the fact that a co-defendant's admissions implicate the moving defendant, a severance will ordinarily be granted unless the prosecutor declares that such admissions will not be offered in evidence at trial or that there will be eliminated therefrom all reference to the party seeking severance. *People v. Miller* (1968), 40 Ill. 2d 154, 158, 238 N.E.2d 407, 409, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401; *People v. Clark* (1959), 17 Ill. 2d 486, 490, 162 N.E.2d 413, 416; *People v. McVay* (1981), 98 Ill. App. 3d 708, 715, 424 N.E.2d 922, 926-27.

■■ In this case, however, neither defendant established at the hearing that his defense was antagonistic to that of his co-defendant. The record

discloses that each defendant admitted doing the acts which formed the basis for the charge of conspiracy to commit murder but that each denied they acted with the requisite mental state, an intent that Mr. Cohn be murdered. The trial court was informed that Cart's defense would be that he only intended to sell information rather than kill Mr. Cohn; Casamassina based his defense on the grounds that he lacked the required intent in light of his impaired functional judgment. Neither defendant blamed the other while completely denying his own complicity and under these circumstances the court did not err in determining their defenses were not antagonistic. See *People v. Lee* (1981), 87 Ill. 2d 182, 187; *People v. Colon* (1979), 69 Ill. App. 3d 1021, 387 N.E.2d 956.

■■ Defendants also assert that the court erred in denying severance on the grounds that in their respective statements given to the police each defendant imputed to the other an intent to carry out the plan to murder Mr. Cohn. Cart had told the police that while he was personally only attempting to secure money from the Cohns that Casamassina was not aware of this fact and thought they were actually going through with the murder plot. In his statement, Casamassina commented that Cart was in big trouble and had planned to kill Mr. Cohn. At the hearing of the motion to sever, the State's Attorney neither promised to withhold these statements from evidence nor to eliminate reference to the other defendant. The court was therefore in error in not granting the motions for severance when made. (See, *e.g., People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413.) Nevertheless, we must determine whether on this record that error requires a reversal for new trials.

In similar circumstances this court has analyzed a defendant's situation in terms of the extent his own statement implicates himself and substantiates admissions of a co-defendant which would not have been in evidence had there not been a joint trial. (See *People v. Colon* (1979), 69 Ill. App. 3d 1021, 387 N.E.2d 956; *People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810, *cert. denied* (1980), 444 U.S. 1043, 62 L. Ed. 2d 729, 100 S. Ct. 729.) In Casamassina's case, he admitted having agreed with Mrs. Cohn to arrange her husband's murder and also to doing certain acts in furtherance of that plan. His statement both inculpated himself and substantiated Cart's similar admissions. While Cart's statement that Casamassina was not aware of Cart's "scam" did impute to Casamassina an intent that the murder actually be committed, it is apparent that Casamassina's criminal intent, an essential element of conspiracy, could also have been readily inferred from his own acts, admissions and the surrounding circumstances. (*People v. Cohn* (1934), 358 Ill. 326, 331, 193 N.E. 150, 153.) We conclude that the evidence of Casamassina's complicity found in his own admissions and corroborating evidence was sufficient to sustain his conviction and the inclusion of that portion of Cart's

statement implicating Casamassina was harmless error beyond a reasonable doubt not requiring reversal.

In defendant Cart's case the most damaging portion of Casamassina's statement was not introduced at trial. Casamassina's comment that Cart planned to kill Mr. Cohn was deleted when offered to the jury and was then consistent with Cart's own version of the matter. We conclude that neither Casamassina nor Cart was denied a fair trial, under these circumstances, by the admission of the defendants' corroborating statements in evidence. *Cf. People v. Ross* (1968), 41 Ill. 2d 445, 244 N.E.2d 608, *cert. denied* (1969), 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771; *People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413.

## II

We consider next defendants' related contentions that their sixth amendment right to confront witnesses was abridged when their co-defendants' statements implicating them were admitted in evidence and neither defendant testified at trial.

■■ In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the court held that in a joint trial the admission of a co-defendant's out-of-court statement implicating the accused is constitutionally impermissible where the co-defendant does not subject himself to cross-examination by testifying at trial, even if the court gives limiting instructions that the admission is to be considered by the jury only as against its maker. No violation of the *Bruton* principle occurs, however, when the defendant claiming the benefit of the rule has himself made a similar inculpatory admission which is also in evidence. (*People v. Rosochacki* (1969), 41 Ill. 2d 483, 493-94, 244 N.E.2d 136, 142; *People v. Moore* (1978), 65 Ill. App. 3d 712, 718, 382 N.E.2d 810, 815, *cert. denied* (1980), 444 U.S. 1043, 62 L. Ed. 2d 729, 100 S. Ct. 729.) The rationale of this distinction is that minimal prejudice inures to a defendant whose own statements are introduced along with those of a co-defendant as compared to one who has made no admissions and whose culpability is established mainly through his co-defendant's statements. (See *People v. Colon* (1979), 69 Ill. App. 3d 1021, 1026, 387 N.E.2d 956, 960.) The underlying consideration is that the jury in a *Bruton* setting might consider a co-defendant's admissions which implicate the defendant, but, where both defendant and a co-defendant make admissions, they will rely most heavily on the defendant's own self-incriminating admissions rather than the less reliable, hearsay statements of the co-defendant. *People v. Rosochacki* (1969), 41 Ill. 2d 483, 494, 244 N.E.2d 136, 142; *People v. Delk* (1976), 36 Ill. App. 3d 1027, 1037, 345 N.E.2d 197, 205-06.

Cart and Casamassina each contend, however, that their statements were not substantially similar to the admissions made by their respective

co-defendants. To the contrary, their respective statements set forth substantially the same conduct by each defendant in this matter. Defendants seek to draw a distinction asserting that their statements were not similar in regard to the essential element of intent that the murder be committed. We are not persuaded. In a conspiracy a defendant's intent can be inferred by the jury from the circumstances of the action which defendants have undertaken. (*People v. Cohn* (1934), 358 Ill. 326, 331, 193 N.E. 150, 153.) In their respective statements each defendant admitted they agreed between themselves and with Mrs. Cohn to kill Mr. Cohn and then performed acts in furtherance of their plan. The jury could properly infer solely from each defendant's admissions their respective intent to carry out that plan. *Cf. People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.

## III

■■ Defendant Cart also contends that Casamassina's statements were inadmissible hearsay when they were introduced in evidence. The statements were not within the scope of the co-conspirator's admission exception to the hearsay rule because they were made to police following arrest rather than in furtherance of the conspiracy. (See, *e.g.*, *People v. Simpson* (1976), 39 Ill. App. 3d 318, 321, 349 N.E.2d 441, 443.) However, Casamassina's statements were not introduced against Cart; the court advised the jury when admitting that evidence and also in its instructions that it was not to consider Casamassina's admissions against Cart. His hearsay argument is therefore without merit.

## IV

Defendant Cart next contends that the statements he gave to police at the Cohn residence and later at the police station should have been suppressed because they were elicited in violation of *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The State argues this issue is controlled by *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

■■ We consider first those statements made by Cart at the Cohn residence before he had been advised of his *Miranda* rights. Prior to Cart's arrival at Cohn's residence, Mr. Cohn told the police officers of the anonymous phone calls he had received and of his fear that they involved an extortion attempt or threat on his life in light of his wife's attack upon him the previous year. The officers were also made aware that the caller had inquired whether Mr. Cohn was alone. When Cart arrived at approximately the time scheduled for Cohn's meeting with the unidentified caller the officers, reasonably enough, stopped him inside the door, identified

themselves, frisked him and then asked Cart for his name and an explanation of why he was at the Cohn residence. In so doing the officers clearly acted in compliance with the standards set forth in *Terry* (see Ill. Rev. Stat. 1979, ch. 38, par. 107—14), under these circumstances. They had grounds to reasonably believe that someone may be coming to the Cohn home at that time to commit a criminal offense and the minimal preliminary inquiries made by the officers were permissible. See *People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.

■■ Cart argues, however that the officers went impermissibly beyond the narrow scope permitted by *Terry* in the absence of *Miranda* warnings. We do not agree. The officers merely asked a general investigative question, "why are you here?" and Cart spoke at length in narrative form of a plot to kill Mr. Cohn. The court in *Miranda* did not intend to impose restrictions on general on-the-scene investigative questioning. (See *People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484, *cert. denied* (1972), 404 U.S. 1020, 30 L. Ed. 2d 669, 92 S. Ct. 692; *People v. Clark* (1977), 55 Ill. App. 3d 496, 371 N.E.2d 33.) Nor are police required to interrupt a person who is in the process of volunteering a lengthy answer in order to give *Miranda* warnings. See *In re Orr* (1967), 38 Ill. 2d 417, 231 N.E.2d 424, *cert. denied* (1968), 391 U.S. 924, 20 L. Ed. 2d 663, 88 S. Ct. 1821; *People v. Baer* (1974), 19 Ill. App. 3d 346, 311 N.E.2d 418; see also *People v. Pettit* (1981), 97 Ill. App. 3d 692, 423 N.E.2d 513.

Cart also argues that when he was detained and questioned at the Cohn residence his fourth amendment right not to be seized without probable cause was violated. In *Dunaway v. New York* the Supreme Court held that custodial detention for questioning without probable cause to arrest violates the fourth amendment and requires suppression of statements made during interrogation unless there are attenuating circumstances which purge the taint of the illegal detention. In light of our holding that the initial stop, frisk and questioning of Cart were permissible under *Terry*, Cart must now contend that at some point his detention exceeded the length and scope of the limited stop sanctioned by *Terry* such that the probable cause requirement of *Dunaway* became applicable and that he was then subjected to custodial detention for purposes of interrogation.

■■ In determining whether there is custodial detention sufficient to make applicable the *Dunaway* probable cause requirement, the courts look to all the surrounding circumstances to consider whether a reasonable person would have believed he was free to leave the scene. (*People v. Miller* (1980), 89 Ill. App. 3d 973, 978, 412 N.E.2d 175, 179-80.) Relevant circumstances may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating

that compliance with the officer's request might be compelled" (*United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877; *People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564), and also whether the accused can be said to have voluntarily initiated the exchange with police or remained in their presence and assisted with their investigation. (See *People v. Herron* (1980), 89 Ill. App. 3d 1048, 412 N.E.2d 1365; *State v. Morgan* (1980), 299 N.C. 191, 261 S.E.2d 827, *cert. denied* (1980), 446 U.S. 986, 64 L. Ed. 2d 844, 100 S. Ct. 2971; Comment, *Custodial "Seizures" and the Poison Tree Doctrine: Dunaway v. New York and its Aftermath*, 13 J. Mar. L. Rev. 733, 736 (1980).) Defendant relies on testimony of the officers that he was in fact under arrest at the Cohn residence and not free to leave, although they did not so inform him. He also finds significant that the officers drew their weapons when he was admitted by Mr. Cohn to the residence and that they then frisked him. There is no indication in the record, however, that Cart was ever exposed to any coercive interrogation while at the Cohn residence; instead, he responded freely to the general questions of the officers as authorized by *Terry*.

Under these circumstances it seems apparent that Cart was not under custodial detention for interrogation and *Dunaway* is not controlling. The statement Cart seeks to suppress resulted from his response to the officers' inquiry as to why he was at the Cohn residence. He told them then that if he could contact his girlfriend he could turn over to the police the weapon that was to be used to kill Mr. Cohn and also that if the officers and he went back to the police station he could verify his identification. By these statements it seems that Cart was voluntarily assisting the police in their investigation. While the officers did testify Cart was not free to leave, this fact was not communicated to defendant and cannot alone be sufficient to support a finding that a reasonable person in these circumstances would have thought that he was not free to leave, after the initial *Terry* stop and the officers put away their guns. See *United States v. Mendenhall* (1980), 446 U.S. 544, 554 n.6, 64 L. Ed. 2d 497, 509 n.6, 100 S. Ct. 1870, 1877 n.6; see also *People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 1127, 408 N.E.2d 1098, 1103.

■■ We conclude that at the Cohn residence Cart was not restrained as that term has been defined in Illinois cases interpreting *Dunaway*. The officers had reasonable suspicion that Cart was involved in criminal activity and probable cause to believe he had information to assist them in their investigation. Accordingly we consider the following rationale persuasive:

"[P]olice officers may question citizens during criminal investigations. Citizens have a duty to cooperate with the police in these investigations. * * *

\* \* \* If a citizen is restrained the police must have the same probable cause for the restraint as they must have for an arrest. (*Dunaway v. New York.*) If a citizen is not restrained, no probable cause beyond a belief that he may assist in an investigation is required." *People v. Miller* (1980), 89 Ill. App. 3d 973, 977-78, 412 N.E.2d 175, 179.

Cart's further statements to the officers at the police station were also properly admitted in evidence. He was fully advised of his *Miranda* rights prior to this questioning and as those rights were not violated by an illegal seizure at the Cohn residence his later statements may not be considered as the fruits thereof.

## V

■■■■ Casamassina also assigns as error a portion of the State's closing argument in light of a comment to the jury by the judge (which was immediately corrected) that the defendants would put on their case once the People had rested. This issue is raised for the first time on appeal and is waived; we consider it only to determine whether the allegedly improper remarks constituted a material factor in defendant's conviction or were so flagrant as to threaten deterioration of the judicial process. (*People v. Anderson* (1981), 95 Ill. App. 3d 492, 494, 420 N.E.2d 830, 832.) The prosecutor argued "he doesn't have a defense" and referred to the defense as a fabrication. Read in context these statements were directed solely at Cart, not Casamassina, and he was not prejudiced by them. The State did refer to Casamassina as an octopus, without defenses, shooting dye to muddy the water so he can escape and setting up a smokescreen to cover up the real evidence. These remarks do not constitute plain error on this record. See *People v. Veal* (1978), 58 Ill. App. 3d 938, 980, 374 N.E.2d 963, 994, *cert. denied* (1979), 441 U.S. 908, 60 L. Ed. 2d 378, 99 S. Ct. 2001; *People v. Calahan* (1976), 42 Ill. App. 3d 994, 1000, 356 N.E.2d 942, 947.

■■ Defendant also contends the argument that there was nothing that was contradictory to the State's case improperly called attention to the fact Casamassina did not testify at trial. References by the prosecution to a defendant's failure to testify are prohibited (see *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229), but the State may comment upon the uncontradicted nature of the evidence, even if defendant is the only person able to contradict the State's evidence, as long as the reference is not calculated to direct the jury's attention to the defendant's failure to testify. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283, 286.) We do not consider the prosecutor's single reference unduly directed the jury's attention to Casamassina's failure to testify; rather, it permissibly pointed out there was no substantial evidence refuting the State's case. (See *People v. McTush* (1978), 61 Ill. App. 3d 214, 219, 377 N.E.2d 1148, 1151.) Defendant's citation of *People v.*

*Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028, as controlling is not persuasive; there the State argued the uncontradicted nature of their case six times rather than once as here. Also, in *Escobar* defendant called four witnesses who rebutted much of the State's evidence, and the reference to uncontradicted evidence, therefore, placed the State in the position of directly referring to defendant's own failure to take the stand.

## VI

Defendants each contend they were prejudiced by a telephone communication by a court bailiff with one of the jurors during trial and were further denied a fair trial when the court failed to conduct a hearing in the presence of defendants to determine whether they were prejudiced by the incident.

Following discharge of the jury, a discussion took place in the presence of all counsel at which the trial judge related that at an earlier, unspecified time a juror had requested to see him in chambers and reported that the previous evening he had received a telephone call from the bailiff in charge of his jury. The caller was said to have been intoxicated and made inquiry of the juror as to what the outcome of the case had been; the juror responded only that the jury would be back in court the next morning. The juror thereafter repeated his account of the incident to the judge in the presence of two assistant State's Attorneys and a court reporter. No verbatim transcript of either of the juror's statements was made and only the trial judge's recollection of the discussion, as disclosed to defense counsel after discharge of the jury, appears in the record.

When informed by the court of the communication, neither of defendants' attorneys made any response on the record nor did they request that a hearing be conducted in the matter. Defendant Cart's post-trial motion alleged he was entitled to a new trial on the basis of improper contacts with a juror. In oral argument on this motion reference also was made to a joint motion for a new trial made by the defendants, which we do not find in the record. Defendant Casamassina's post-trial motion alleged the court had a duty to conduct an investigation into the occurrence on its own motion.

On appeal defendants contend they were prejudiced by the communication and by the court's failure to hold a hearing at which they could have determined the extent the communication may have tainted the jury.

We have considered the trial judge's account of the bailiff's telephone call to the juror and conclude defendants have failed to establish they were prejudiced by the mere inquiry as to what the outcome of the case had been. It is difficult to imagine how this single question, without any showing it was coupled with an attempt to

influence the juror's decision, could deny defendants their right to an impartial jury. The law is well settled in Illinois that a jury verdict will not be set aside because of a communication with a juror by court personnel or other third persons outside the presence of the accused where it is apparent no prejudice resulted from the exchange. *(People v. Berry* (1960), 18 Ill. 2d 453, 459, 165 N.E.2d 257, 260, *cert. denied* (1960), 364 U.S. 846, 5 L. Ed. 2d 69, 81 S. Ct. 87; *People v. Wurster* (1980), 83 Ill. App. 3d 399, 410, 403 N.E.2d 1306, 1315.) While defendants argue they were inherently prejudiced because of the aura of importance attached to a court bailiff's communication, citing *Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468, that case did not alter the requirement that defendants must establish they were prejudiced by the communication. See *People v. Rettig* (1972), 50 Ill. 2d 317, 278 N.E.2d 781; *People v. Buckhana* (1981), 99 Ill. App. 3d 889, 425 N.E.2d 1297.

■■ Defendants' contention they were prejudiced by the court's failure to hold a hearing to question the jurors and bailiff regarding this matter must be considered in light of the fact none was requested by either defendant. Counsel for Casamassina agreed in oral argument that no such request was made either at the time counsel were advised of the occurrence by the trial judge or in defendants' post-trial motion. We would agree that the better practice would have been for the trial judge to have interviewed the juror in the presence of all counsel prior to discharge of the jury to give them an opportunity to make further inquiry if they wished to do so. (See *Remmer v. United States* (1954), 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450; *People v. Weaver* (1980), 90 Ill. App. 3d 299, 412 N.E.2d 1353.) If requested, such a hearing could still have been undertaken at the time defendants were advised of the occurrence by the trial judge, but they did not request it. As this court stated in *People v. Trejo* (1976), 40 Ill. App. 3d 503, 513, 352 N.E.2d 68, 76:

"A trial judge has * * * discretion to determine whether there were improper influences upon the jury by the bailiff * * *.

In this case, although better practice would have included an examination of the bailiff [and juror] by the trial judge in the presence of [all] counsel, we find that the trial judge did not abuse his discretion in refusing to order a hearing on the issue of jury contamination."

## VII

Defendants each finally contend that neither was proved guilty of conspiracy beyond a reasonable doubt.

Casamassina essentially argues that because Cart denied he agreed to murder Mr. Cohn, and conspiracy cannot be established without the existence of an agreement, that Casamassina's conviction must be reversed. In this argument, however, he fails to consider his admitted agreement

with Mrs. Cohn, another co-conspirator, that the murder be committed. Casamassina also argues his intent that Mr. Cohn be murdered was not established but again fails to take into account his admissions that he did so agree with Mrs. Cohn and Cart and did perform acts in furtherance of their plan. It is also true that intent may be inferred from the circumstances of the case.

■■ Casamassina also asserts that the court erred in refusing to give the second paragraph of the circumstantial evidence instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968)), that a defendant should not be found guilty unless the circumstances exclude every reasonable hypothesis of innocence. This portion of that instruction will not be given, however, unless the evidence of guilt is entirely circumstantial. (*People v. Craig* (1979), 79 Ill. App. 3d 584, 588, 399 N.E.2d 168, 171; *People v. Hines* (1975), 28 Ill. App. 3d 976, 983, 329 N.E.2d 903, 908.) Defendant's admissions, together with certain other evidence, constituted direct evidence of his guilt and the court accordingly did not err when it refused to so instruct. See *People v. Sanchez* (1979), 73 Ill. App. 3d 607, 392 N.E.2d 378.

■■■ Cart also contends that the State failed to prove that he intended to murder Mr. Cohn, pointing to the evidence of his repeated statements to police that he only intended to obtain money. We note again that a defendant's intent may be inferred by the jury from all of the surrounding circumstances. Cart's admissions and his acts in furtherance of the common design were sufficient to establish the conspiracy charge. (*Cf. People v. Persinger* (1977), 49 Ill. App. 3d 116, 363 N.E.2d 897, *cert. denied* (1978), 435 U.S. 917, 55 L. Ed. 2d 509, 98 S. Ct. 1474.) The jury could have found under the evidence that Cart agreed in his initial telephone conversation with Casamassina that Mr. Cohn should be killed and that they intended at that time to carry out the plan. It may well have appeared improbable to the jury that Cart at that early date was planning a "scam" of his co-conspirators and the Cohns as he knew nothing of the Cohns' circumstances when he accepted Casamassina's offer and came to Illinois for the agreed purpose. The jury may also have found it improbable that Cart was seeking to profit from selling information to Mr. Cohn when he asked David Quinn to join him in the plan and purchased the guns and other materials which would not be required had he never intended to carry out his stated purpose. We conclude on the record before us that the guilt of defendants Cart and Casamassina was established beyond all reasonable doubt.

Accordingly, the judgments of the circuit court of Lake County will be affirmed.

Judgments affirmed.

HOPF and LINDBERG, JJ., concur.