THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR JOHNSON *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 81—1779, 81—1861 cons.

Opinion filed March 29, 1985.

2

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant Victor Johnson.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant Darnell Jones.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and Maria Elena Gonzales, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, defendants Victor Johnson and Darnell Jones were each convicted of unlawful restraint, aggravated kidnaping, deviate sexual assault, armed robbery, rape and murder. The defendants were sentenced to extended terms for each offense except that the offenses of unlawful restraint merged into the offenses of aggravated kidnaping. Both men appeal. Johnson contends that (1) the trial court erred in denying his motion for severance and (2) the trial court erred in imposing extended-term sentences for the lesser offenses of which he was convicted. Jones contends that (1) the trial court abused its discretion by sentencing him without a complete presentence report and refusing to either order a new report or continue the sentencing hearing so that Jones' mental health records could be obtained; (2) the trial court erred in imposing extended-term sentences for the lesser offenses of which he was convicted; (3) the court erred in imposing an extended-term sentence for murder where the conviction was based on an accountability theory and (4) the court erred in ordering his other sentences to run consecutively to the sentence for aggravated kidnaping.

On July 31, 1979, the body of a female was found in the alley behind 14729 Cooper Street in Harvey. The body was identified as that of Fannie Mae Gause. At trial, Dr. Yuksel Konacki of the Cook County medical examiner's office testified that on July 31, 1979, he had performed an autopsy on Fannie Mae Gause. He stated that the cause of her death was a shotgun wound to the chest at very close range.

Two days later, at approximately 4 a.m., defendant Jones was involved in a car accident at an intersection in Oak Park. He and a companion were arrested and taken to the hospital for treatment of injuries sustained in the accident. At the time of the arrest, police recovered a .12-gauge sawed-off shotgun and a .25-caliber pistol. Approximately an hour and a half later, Jones was taken from the hospital to the Oak Park police station. Craig Ford, the arresting officer, testified that he had advised Jones of his *Miranda* rights and that Jones indicated that he understood them. Officer Ford further testified that Jones told him he had witnessed a shooting in Harvey two or three days earlier. Officer Ford then contacted the Harvey police department. At about 6:30 a.m., Detective Coleman McCarthy of the Harvey police came to the Oak Park police station.

At trial, Detective McCarthy testified that he also read Jones his *Miranda* rights and Jones indicated he wanted to talk to him. McCarthy further testified that Jones gave him the following account of the events leading to the murder of Fannie Mae Gause: On July 31,

1979, he and Victor Johnson were driving around Chicago in a stolen car when they saw a woman walking down the street near 87th Street and King Drive. They pulled over to the curb. Jones got out of the car and walked up to a building as though to ring the doorbell. As the woman passed alongside the car, Jones forced her into it. He then robbed her of 30 cents. Johnson and Jones drove off with the woman and Jones raped her, sexually assaulted her and forced her to perform deviate sexual acts. Johnson took the Sibley Boulevard exit off the Dan Ryan Expressway and stopped the car in an alley in Harvey. He then raped the woman. The defendants allowed the woman to get dressed and they got out of the car. The moment she got out of the car, the woman began to scream and plead with the defendants for her life. Johnson slapped her and told her to stop screaming but she continued. Johnson then shot her in the chest with a shotgun. Jones told McCarthy that two days later, Johnson sawed the barrel off the shotgun. Jones gave McCarthy Johnson's address and a physical description of him. On cross-examination, McCarthy stated that Jones said he had told Johnson to let the woman go.

McCarthy then testified that after speaking to Jones, he went to Chicago police department Area 2 Homicide and, with their assistance, conducted surveillance of the area of Johnson's home at approximately 5 o'clock that evening. At 6 p.m., Johnson was arrested and taken to the police station. He was given the *Miranda* warnings but indicated that he understood them and wanted to talk. He also signed a form waiver of his constitutional rights.

McCarthy testified that Johnson then gave him an account of the murder. McCarthy's account of Johnson's statement was substantially the same as Jones' statement, although Johnson did not admit raping the woman. McCarthy asked Johnson if he would make a written statement. Johnson agreed but said he could not write legibly. McCarthy's secretary then typed the notes McCarthy had made of Johnson's statement. Johnson read the typed statement and signed it.

On August 8, 1979, McCarthy went to see Jones again in order to get a written statement and to determine whether Jones had anything to add to his account. After being read his *Miranda* rights, Jones dictated his statement to McCarthy, read it and signed it.

Defense counsel objected prior to McCarthy's testimony regarding the statements he received from Johnson and Jones. The court first admonished the jury that Jones' statement was to be considered only as to Jones and not as to Johnson. When McCarthy started to testify about Johnson's statement, the court admonished the jury to consider the statement only in regard to Johnson and not as to Jones. At that

time, the court again advised the jury that McCarthy's testimony as to Jones' statement could be considered only as to Jones.

Assistant State's Attorney Michael Madden also testified that on August 3, 1979, he took a written statement from Victor Johnson about the events of July 31. Johnson's statement to Madden was substantially similar to his statement to McCarthy. In his statement to Madden, Johnson stated that after he returned to Chicago, he pulled out the shell that was fired from the shotgun, burned the rear part off and threw the cap away on his neighbor's roof. The court admonished the jury that Madden's testimony had been received as to Johnson only and not as to Jones. All three written statements were published to the jury after further admonishments by the court.

Johnson and Jones were tried before the same jury. Johnson testified at trial but Jones did not. After closing arguments were heard, the jury was instructed that any evidence limited to one defendant was not to be considered as to the other defendant. The jury returned guilty verdicts against each defendant for murder, armed robbery, rape, aggravated kidnaping, deviate sexual assault and unlawful restraint.

■ We first address the common issue presented for review. Both defendants appeal the imposition of extended-term sentences for the lesser offenses of which they were convicted. In addition to extended terms of 80 years for murder, defendants were each sentenced to extended terms of 60 years for rape, 60 years for deviate sexual assault, 60 years for armed robbery and 30 years for aggravated kidnaping.

In *People v. Jordan* (1984), 103 Ill. 2d 192, 205-06, 469 N.E.2d 569, 575, our supreme court recently clarified the law relating to the propriety of imposing multiple extended-term sentences. The court reaffirmed its decision in *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520, and stated that when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may be imposed only for the conviction within the most serious class and only if that offense was accompanied by brutal or heinous behavior.

In the instant case, the trial court found that all the offenses of which both men were convicted were accompanied by brutal and heinous behavior. The extended-term sentences for murder were thus appropriate under the *Jordan* standard. The extended terms imposed for the lesser offenses, however, were improper and must be vacated. Both defendants should be resentenced for the lesser offenses.

■ Johnson also contends that the trial court erred in denying his motion for severance where he and Jones were tried before the same jury and where Jones' corroborative statement implicating Johnson was not subject to cross-examination because Jones did not testify. In

support of his argument, Johnson cites *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. In *Bruton,* the supreme court held that the introduction into evidence of the statement of a nontestifying defendant implicating a codefendant violated that defendant's sixth amendment right to confrontation, regardless of whether the jury was given appropriate limiting instructions. The Illinois Supreme Court, however, has held that no violation of the *Bruton* rule occurs where the defendant claiming the benefit of that rule has himself made a similar inculpatory statement which is also in evidence. *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136; *People v. Cart* (1981), 102 Ill. App. 3d 173, 429 N.E.2d 553; *People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810, *cert. denied* (1980), 444 U.S. 1043, 62 L. Ed. 2d 729, 100 S. Ct. 729.

Although at trial Johnson denied any involvement in the crimes against Fannie Mae Gause, his two signed inculpatory statements were introduced into evidence, as was the oral statement he made to Detective McCarthy. Johnson's statements were corroborative of Jones' and were even more detailed. We find, therefore, that there was no violation of the *Bruton* rule. The trial court did not err in denying Johnson's motion for severance.

■ Jones' first argument on appeal is that the trial court abused its discretion in sentencing him after defense counsel informed the court that the presentence report was incomplete. At Jones' sentencing hearing, his counsel pointed out that the report failed to include any mention of Jones' stay at the Tinley Park Mental Hospital and, in fact, indicated that Jones had no mental health history. Defense counsel asked the court to reorder a presentencing investigation and requested that the sentencing hearing be continued in order that Jones' mental health records could be obtained. The court overruled the request and noted that the report had been available to defense counsel for one week prior to the sentencing hearing.

In *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9, the supreme court reversed an order of the appellate court which had required the defendant to be resentenced because defendant's presentence report was insufficient. In *Meeks,* the presentence report had not mentioned sentencing alternatives or community programs to assist in defendant's rehabilitation as required by the Uniform Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2(a)(2).) Although the supreme court agreed with the finding of the appellate court that the presentence report in *Meeks* did not fully comply with the requirements of the code, it held that the issue had not been preserved for review. The court noted that counsel had not called the matter to the trial

court's attention prior to defendant's sentencing hearing, despite the fact that the presentence report had been available to and read by counsel three days prior to the hearing. The supreme court found that any objections to the presentence report had been waived.

Similarly, in the case at bar, Jones' presentence report was available to counsel for at least seven days prior to Jones' sentencing hearing. Counsel, however, did not move for a new report or for a continuance to obtain his client's mental health records until the hearing was underway. Therefore, counsel failed to properly preserve this issue for review. The trial court did not abuse its discretion in sentencing Jones without the additional data. See *People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400, *cert. denied* (1977), 434 U.S. 839, 54 L. Ed. 2d 102, 98 S. Ct. 133.

Jones next argues that the court erred in sentencing him to an extended term for murder. He contends that his behavior was not sufficiently brutal or heinous or indicative of wanton cruelty to warrant the imposition of an extended term. In support of his argument, Jones points out that the basis of his conviction was felony murder and that he did not kill the victim.

██ ██ It is well established that a trial court has wide discretion in imposing a sentence, and that its determination should not be altered on review absent a clear abuse of that discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Further, in imposing an extended-term sentence, the court should properly focus on the offense rather than the nature of the offender's participation. (*People v. Rowe* (1983), 115 Ill. App. 3d 322, 329, 450 N.E.2d 804, *aff'd* (1984), 103 Ill. 2d 192, 214-15, 469 N.E.2d 569; *People v. Gray* (1980), 87 Ill. App. 3d 142, 153, 408 N.E.2d 1150, *cert. denied* (1981), 450 U.S. 1032, 68 L. Ed. 2d 228, 101 S. Ct. 1745.) Section 5—5—3.2(b)(2) of the Unified Code of Corrections provides that the court may impose an extended-term sentence when the defendant is convicted of any felony and the court finds the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).

██ In *Rowe* and *Gray*, this court upheld the imposition of extended-term sentences where the defendant's conviction was based on an accountability theory and where the court found there was brutal and heinous conduct on behalf of the defendant indicating wanton cruelty.

At Jones' sentencing hearing, the court stated:

"*** By way of aggravation, clearly the defendant himself caused serious harm. Fortunately for him he did not pull the

trigger and he is the only one, I think, is going to benefit from that. Otherwise I think he would be looking at the possibility of capital punishment.

\* \* \*

This defendant, while he didn't grab the gun and shoot, he certainly, from the testimony and the evidence that is in, facilitated and helped place the idea of such conduct into his co-defendant's mind.

The court further finds that these offenses and each of them were accompanied by exceptional brutality or heinous behavior indicative of wanton cruelty such as to authorize extended term."

It was not error to sentence Jones to an extended term for murder.

██ █ Finally, Jones contends that the trial court erred in sentencing him to consecutive sentences. He maintains that the court's determination that such sentences were necessary for the protection of society was based on allegedly unreliable testimony regarding Jones' original arrest in Oak Park and his attempts to escape while in custody. Section 5—8—4(b) of the Unified Code of Corrections provides that the court may impose a consecutive sentence only if, having regard to the nature and circumstances of the offense and the history and character of the defendant, it determines that such a term is required to protect the public from further criminal conduct by the defendant. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).

At Jones' sentencing hearing, an assistant State's Attorney testified that he had knowledge of two efforts by Jones to escape from custody. Defense counsel objected on the basis that this was hearsay. In determining what evidence is admissible at a sentencing hearing, the trial court is not limited by the ordinary rules of evidence. (*People v. Williamson* (1979), 69 Ill. App. 3d 1037, 388 N.E.2d 240.) Further, defense counsel was able to cross-examine the assistant State's Attorney at the hearing regarding the attempted escapes. After a review of the record, we find that the evidence was competent and that the court did not abuse its discretion in sentencing Jones to consecutive sentences in order to protect society.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part.

Affirmed in part and reversed and remanded in part.

WHITE, P.J., and RIZZI, J., concur.