THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
BRET LANG, Defendant-Appellee.

Fifth District    No. 78-26

Opinion filed December 12, 1978.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and Keith P. Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by the State pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)) from an order of the circuit court of Jackson County suppressing three cannabis plants seized from the back seat of defendant's automobile.

The defendant was charged by information with the offense of possessing more than 10 but not more than 30 grams of a substance containing cannabis. (Ill. Rev. Stat. 1977, ch. 56½, par. 704(c).) Prior to trial he filed a motion to quash his arrest and suppress all material and information obtained as a result of a search of his automobile. The primary contention of defendant's motion was that the search which turned up the contraband was incident to an illegal stop of his automobile. After conducting a hearing, the circuit court on October 20, 1977, entered an order granting the motion to suppress. Although the circuit court failed to include sufficient findings of facts and conclusions of law to adequately establish the basis of its order (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(e)), we find that the order must be affirmed since the evidence presented at the suppression hearing established that the police officer illegally stopped defendant's automobile because he could not reasonably have inferred from the circumstances that defendant was committing, was about to commit or had committed a criminal offense (Ill. Rev. Stat. 1977, ch. 38, par. 107—14; *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88; see also *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574). *People v. Eastin* (1972), 8 Ill. App. 3d 512, 289 N.E.2d 673.

Although no transcript of the suppression hearing was made a statement of facts signed by the circuit judge was filed simultaneously with the suppression order. Since it is relatively concise we will reproduce the relevant portions of the statement here.

"At approximately 1:00 a.m. on June 25, 1977 Officer Mike Mileur of the Illinois State Police was dispatched to a rural road in Jackson County to investigate a report of a stolen truck. The officer testified that he had been told by a neighbor that a blue chevrolet had been seen in the area. After his arrival at the scene a wrecker was called and was in the process of pulling the stolen truck from a ditch on the side of the road. The wrecker was

blocking the entire road so that no other automobile could pass. The Officer testified that he saw the defendant's automobile approach the wrecker and stop approximately 300 feet from it. The defendant started to back his car up and as he began to back down the roadway from the wrecker, the Officer motioned for the driver to stop the vehicle. The Officer then walked to the defendant's vehicle. The Officer stated reasons for approaching the vehicle were to inform the driver that the roadway would be blocked for only a short time and to determine whether the driver or the vehicle had been involved in any way with the reported stolen vehicle. The Officer testified that as he approached the vehicle he had no idea who was in the vehicle and aside from the make of the car, which appeared to be a green chevrolet, he had no facts relating the defendant's vehicle to his investigation of the stolen truck. As the Officer approached the defendant's vehicle he asked the driver for his driver's license which the driver, who was the defendant produced immediately. During this time Officer Mileur testified that when he shone his flashlight into the vehicle, he saw an open beer can next to the driver in open view. He asked the driver for an explanation of the beer can and the driver responded that it was an old beer can. The Officer testified that he was not in fear for his own safety at this time. The Officer then testified that he shone his light into the back seat of the defendant's car and saw three (3) marijuana plants in bushel baskets resting on the back seat in open view. * * *

The Officer testified that he had neither a search warrant nor an arrest warrant and that the defendant did not give him consent to look into his car or to detain his car. * * *"

■■■ In *Terry v. Ohio* (1968), 392 U.S. 1, 9, 20 L. Ed. 2d 889, 898, 88 S. Ct. 1868, 1873, the United States Supreme Court noted that no right is more sacred or more carefully guarded "than the right of every individual to the possession and control of his own person free from all restraint or interference of others, unless by clear and unquestionable authority of law." Although the court in *Terry* declined expressly to decide whether facts not amounting to probable cause could support an investigative "seizure" or stop of a person for purposes of detention or interrogation (392 U.S. 1, 19 n. 16, 20 L. Ed. 2d 889, 905 n. 16, 88 S. Ct. 1868, 1879 n. 16), it did hold that a stop, and therefore a seizure, of a person under the fourth and fourteenth amendments occurs "whenever a police officer accosts an individual and restrains his freedom to walk away" (392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877; see also *People v. Ortiz* (1973), 18 Ill. App. 3d 431, 305 N.E.2d 418). The Supreme Court further clarified this point by stating that:

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." (*Terry*, 392 U.S. 1, 19 n. 16, 20 L. Ed. 2d 889, 905 n. 16, 88 S. Ct. 1868, 1879 n. 16.)

Our courts have echoed this definition by holding that the essence of a stop is the element of force or threatened force which constitutes a restraint on the freedom of the suspect's movement. *People v. Ortiz*; *People v. Jordan* (1976), 43 Ill. App. 3d 660, 357 N.E.2d 159; *People v. Hines* (1973), 12 Ill. App. 3d 582, 299 N.E.2d 581.

Since *Terry*, the Illinois General Assembly has supplied the authority and appropriate standard for a peace officer's stop of a person short of an arrest in section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—14). That section provides that a law enforcement officer may detain and temporarily question a person in a public place "when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * *." This standard applies with equal force to a stop of a motorist. *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88; *People v. Schlottman* (1976), 37 Ill. App. 3d 62, 344 N.E.2d 8.

A considerable portion of the argument in the briefs filed in this court has been devoted to the question whether Officer Mileur's use of a flashlight to see the beer can and cannabis plants in defendant's car would preclude a finding that those items were in plain view. It will not be necessary to address this issue here since we find that the defendant was stopped or seized at the moment his car was stopped and that the statutory standard of section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—14) was not satisfied at that time. Consequently, the cannabis plants were discovered incident to an illegal stop.

The facts reveal that at the time Officer Mileur motioned for the defendant to stop his vehicle, the defendant was in the process of backing up his automobile so as to take an alternate route to his destination. Although the officer was approximately 100 yards from defendant's moving automobile, and apparently on foot, he was able to communicate to the defendant that he wanted him to stop his car. The defendant heeded his signal, thereby affording the officer an opportunity to approach the vehicle and look into it.

In several cases in which a motorist has been stopped by a police officer, the courts have assumed that the motorist has been subjected to a seizure of his person and concerned themselves only with whether the officer could have reasonably inferred that the motorist was committing, was about to commit or had committed an offense. (*E.g., People v. James*; *People v. Schlottman*; *People v. Roberts* (1971), 2 Ill. App. 3d 927,

274 N.E.2d 688.) Because the officers' show of authority in these cases were relatively demonstrative and unequivocal (*James*, flashing red lights and signal to stop; *Roberts*, flashing red lights; *Schlottman*, flashing lights and squad car across roadway), it is not entirely clear whether seizures were presumed because of the facts or because of something inherent in the officers' causing a motorist to stop his vehicle. We disfavor this imprecision because it is critical to know at what point a person is seized or stopped since the legality of the stop must be judged by the circumstances which existed at that moment. It is our holding that the manner in which an officer communicates to a motorist to stop his vehicle is irrelevant and that a motorist is seized in all instances at the moment he stops his car at the behest of a law enforcement officer.

Practically speaking, at the moment when a motorist stops his car, his movement has been restrained. This restraint is obviously achieved by the officer's show of authority since the motorist would not have stopped if the officer had not indicated in some manner that he should do so. Moreover, because of the realities of a motorist's situation, it would be unfair to say, as is sometimes done in cases involving pedestrians (*e.g., People v. Hines; People v. Ortiz; People v. Howlett* (1971), 1 Ill. App. 3d 906, 274 N.E.2d 885), that a motorist actually stopped by a police officer was not restrained but rather was free to go about his way.

A motorist does not have the same communicative potential with a police officer which a pedestrian has. The pedestrian being in more or less face-to-face contact with the confronting officer is able to assess the officer's purpose and determine whether he is free to continue on his way. The motorist, however, is effectively separated from anyone who is not in his automobile by virtue of its rapid movement and his enclosure within the vehicle. Hence, whenever a police officer in any manner directs a motorist to stop his vehicle, the motorist, unlike a pedestrian, is unable to determine whether he can ignore the officer's directive and continue on his way. Consequently, he has no choice but to actually stop his car and for all intents and purposes he is restrained at that point.

■■ We note further that when a person in a motor vehicle is stopped, he is inconvenienced much more than when his travel as a pedestrian is momentarily interrupted. It therefore would be unreasonable to allow a police officer to direct a motorist to stop unless he can reasonably infer from the circumstances that he is committing, is about to commit or has committed an offense.

■■ As is evident from our comments above, we find that defendant Lang was "seized" at the moment his automobile was stopped. We find further that at that moment Officer Mileur could not have reasonably inferred from the circumstances that the defendant was committing, was about to commit or had committed an offense. The facts show that at the

time the officer directed the defendant to stop his automobile, defendant was operating it in a manner which was both legal and entirely reasonable considering the obstruction of the roadway. The officer had no idea who was operating the car and admitted to possessing no facts which could tie the vehicle to his investigation of the stolen truck other than the fact that it was a green Chevrolet. That fact, however, was not significant since it was a blue Chevrolet and not a green one which a neighbor had seen in the area. Further, there is nothing in the record to suggest that the blue Chevrolet was actually involved in the theft of the truck. Despite this total lack of circumstances connecting defendant to a crime, the officer chose to stop defendant in order to "determine whether the driver or the vehicle had been involved in any way with the reported stolen vehicle." Under these circumstances, the stop was unlawful, and the evidence which was discovered as a result of it was properly suppressed.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

EBERSPACHER and KARNS, JJ., concur.