THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUSTAVO BUJDUD, Defendant-Appellant.

First District (3rd Division) No. 86—1283

Opinion filed December 14, 1988.

Joseph R. Lopez, P.C., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Catharine M. Forest, Sari L. Slivnick, and Susan Salita, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Gustavo Bujdud, was convicted of murder and was sentenced to a term of 32 years. Defendant appeals, contending the following: the police lacked sufficient facts to warrant the investigatory stop of defendant and the stop was, in fact, a warrantless arrest; the search of defendant's vehicle was improper and all evidence flowing from that search should be suppressed; the admission into evidence of a photograph of defendant was prejudicial; the State failed to produce during discovery the contents of an oral statement made by defendant; and the prosecutor made improper comments in rebuttal argument. Codefendant Louis Rainone, who was also convicted of murder, filed a separate appeal. In my opinion filed October 19, 1988, this court affirmed that conviction. *People v. Rainone* (1988), 176 Ill. App. 3d 35.

On June 8, 1984, at approximately 10 p.m., Michelle Angelilli was walking to 21st Street and Cicero when she saw two men in a black car driving down 19th Street. Before she reached her destination, she saw the car twice more. At 21st Street and Cicero, Angelilli met her boyfriend, Roman Rys. She was talking to Rys when she saw defendant and Rainone, each carrying a weapon, approach them. She observed defendant point his weapon at a bystander, John Odle, and order Odle to move. Defendant and Rainone then moved closer to Angelilli and Rys, aimed their weapons at Rys, and shot him. Defendant and Rainone ran down 21st Street toward 48th Court. Shortly afterwards, defendant was stopped by Officer Markas of the Cicero police department for speeding.

Markas testified that at approximately 10:30 p.m., he heard a police broadcast that a shooting had occurred at 21st Place and Cicero. Markas was 2½ blocks away from that location. Immediately following

the broadcast, he observed a small black car driving westbound on 21st Place from 50th Avenue, the vicinity of the shooting. The speed with which the car emerged from the intersection led him to believe the car could not have stopped for the stop sign located at the corner of 21st Place and 50th Avenue. Markas followed the car, which he judged was exceeding the speed limit by at least 10 miles per hour. He stopped the vehicle, radioed in the license plate number, and asked if the vehicle was known to be involved in the shooting. Officers Foster and Lief of the Gang Crimes Unit heard his broadcast and proceeded to the traffic stop.

At the scene of the traffic stop, defendant emerged from the car and approached Markas. Rainone, the passenger, remained in the car. Markas drew his gun and held it at his side for safety.

Officers Lief and Foster parked their patrol car diagonally in front of defendant's car. The officers then heard a radio broadcast indicating that two white males carrying shotguns had been seen running from the scene of the shooting. The broadcast also identified the victim as Roman Rys. Lief and Foster recognized Rys' name and knew him to be a member of a gang known as the "Two Two Boys." The officers recognized defendant and knew him to be a member of a rival gang, the "Twelfth Street Players." As the officers exited their vehicle, they drew their guns but held them down at their sides.

Defendant and Rainone were questioned by the officers. Lief testified that defendant generally appeared nervous during questioning and that he gave evasive answers. Lief patted down both defendant and Rainone but found no weapons. Foster searched the interior of the car but found no weapons. Foster then asked defendant if he could look in the trunk. Defendant shrugged and said yes. When the trunk was opened, Foster discovered a double-barreled shotgun and a rifle. Defendant and Rainone indicated they had no knowledge of the weapons. They were taken to the police station, as was defendant's vehicle. No traffic ticket was issued.

At the police station, officers obtained a signed consent to search the vehicle from defendant's mother, the owner of the vehicle. The weapons in the trunk of the car then were removed. Later that evening, a lineup was conducted. Two witnesses identified defendant as one of the men who shot the victim.

An assistant State's Attorney interviewed defendant at the police station. During the interview, defendant made certain statements which amounted to a confession of his involvement in the shooting. He admitted to the activities leading to the death of the victim and to improper driving immediately after the shooting.

In a pretrial motion, defendant moved to quash the arrest and to suppress evidence, to suppress the identification, and to suppress the statement made to the assistant State's Attorney. The trial court denied all motions. The court found that the arrest was proper and the evidence lawfully obtained, and that defendant failed to show suggestiveness or impropriety in the lineup. The trial court further found that defendant had been advised of his *Miranda* rights before giving any statement; that he had not been mistreated or given any promises; that he knowingly and intelligently waived his *Miranda* rights; and that, accordingly, any statements were voluntary.

The trial court additionally denied defendant's motion *in limine* requesting the exclusion at trial of a photograph of defendant. The photograph depicted defendant wearing a gang sweater and making a gang signal. The photograph was admitted into evidence at trial.

Defendant first contends that Markas improperly stopped defendant's vehicle because he lacked sufficient facts to justify the stop. Specifically, defendant maintains that Markas acted on a mere hunch or suspicion rather than on specific and articulable facts.

■ It is well settled that a police officer may stop and temporarily detain an individual for the purpose of a limited investigation if the officer is able to point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, reasonably would justify the investigative intrusion. In such situations, the officer need not have probable cause to arrest the individual. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1968.) In Illinois, this standard is codified at section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38 par. 107—14), and applies with equal force to the stop of a motorist. *People v. Runnion* (1986), 150 Ill. App. 3d 879, 502 N.E.2d 439.

■ Our courts use an objective standard to determine whether an investigatory stop is reasonable. (*People v. Eyler* (1985), 132 Ill. App. 3d 792, 477 N.E.2d 774.) Thus, a stop is proper if the facts available to the officer would warrant a man of reasonable caution to believe that the action taken was appropriate. (*People v. Martinez* (1984), 129 Ill. App. 3d 145, 472 N.E.2d 464.) An investigatory stop may be justified through the use of rational inferences drawn from facts known to the officers. (*People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237.) Each case must be decided on its own facts, and a reviewing court may not disturb the trial court's decision unless that decision was manifestly erroneous. *People v. Herron* (1980), 89 Ill. App. 3d 1048, 412 N.E.2d 1365.

■ We believe Markas had adequate facts to warrant the initial

investigatory stop of defendant's vehicle and that he acted on the basis of more than a mere hunch. Markas had knowledge of a nearby shooting; he observed defendant's vehicle proceeding at an excessive rate of speed away from the vicinity of the shooting and determined the vehicle was going too fast to have stopped at a nearby stop sign, and he observed no other vehicles on the road. Although Markas had no information that a car was involved in the incident, we do not find it unreasonable for him to have inferred that suspects would attempt to flee the general vicinity of a crime in a car. (See *People v. Martinez* (1984), 129 Ill. App. 3d 145, 472 N.E.2d 464.) Moreover, defendant's traffic violations of themselves provided Markas with sufficient cause to stop defendant's vehicle. We find that the foregoing facts, particularly the extreme spatial and temporal proximity to the crime, provide a reasonable basis for the initial stop of defendant's vehicle.

Defendant next contends his initial detention was in fact an arrest and that there was no probable cause to arrest defendant without a warrant.

We already have determined that the initial investigatory stop of defendant's vehicle was proper. We now focus on the reasonableness of the officers' conduct between the time Markas initially stopped defendant and the point at which there was probable cause to arrest him. We believe that the detention of defendant for questioning led to sufficient facts to establish probable cause to arrest him.

■ In determining whether a detention is custodial in nature, requiring a showing of probable cause, or merely investigatory in nature, a reviewing court must look to a variety of factors. (*People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237.) Some of the relevant considerations include whether there was the threatening presence of several officers, whether there was physical touching of a person or use of language or a tone indicating that compliance with an officer's request might be compelled, whether an accused voluntarily initiated conversation with the officers or remained in their presence and assisted with the investigation (*People v. Runnion* (1986), 150 Ill. App. 3d 879, 502 N.E.2d 439), whether handcuffs were employed, and whether there was a display of a weapon by an officer. (*People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237.) The presence of any one of these circumstances, alone or in concert with others, will not automatically convert a stop into an arrest. (See generally *People v. Jackson* (1986), 145 Ill. App. 3d 789, 495 N.E.2d 1359.) Specifically, the fact that an officer has his gun drawn while conducting the investigatory stop does not convert that stop into an arrest. It would make little sense to permit an officer to detain pursuant to an investigatory stop

and yet deny him the right to use the force necessary to effectuate that detention. (*People v. Roberts* (1981), 96 Ill. App. 3d 930, 422 N.E.2d 154.) Police officers are not required to risk their safety by assuming that a subject will submit peacefully to questioning. (*People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.) Furthermore, mere restraint of an individual does not turn an investigatory stop into an arrest. (*People v. Paskins* (1987), 154 Ill. App. 3d 417, 506 N.E.2d 1037; *People v. Roberts* (1981), 96 Ill. App. 3d 930, 422 N.E.2d 154.) It is the length of detention and the scope of investigation which distinguish an arrest from a stop, not the initial restraint. *People v. Paskins* (1987), 154 Ill. App. 3d 417, 506 N.E.2d 1037.

■ We need not determine at which point defendant was placed under formal arrest. Rather, we need only determine whether the officers' actions were reasonable up to the point at which the situation matured to probable cause. We believe that the length of detention and the scope of investigation were appropriate. The officers reasonably drew their weapons for their own safety in questioning the two men. The officers reasonably questioned defendant and Rainone as to their whereabouts that evening and at that time observed defendant's nervousness and evasiveness; the officers reasonably searched defendant and Rainone for weapons; and the officers reasonably requested, and received, permission to open the trunk of defendant's vehicle. In the trunk, the officers found a shotgun and a rifle. At no time during this brief investigation did the officers act unreasonably, nor did they exceed the scope of permissible investigation prior to the development of probable cause. Accordingly, we find no error in the trial court's denial of defendant's motion to quash the arrest.

Defendant next contends that the search of his vehicle was unlawful because it was conducted without a warrant and that he did not consent to the search. We believe that the search was conducted lawfully and that a warrant was not needed.

■ The fourth amendment's prohibition against unreasonable searches and seizures mandates that a warrant be obtained before an automobile may be searched, unless the search was made with consent, upon probable cause to believe that the vehicle was used in or contains evidence of a crime, as incident to an arrest, or after lawful impoundment of the car. (*People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346, *cert. denied* (1981), 453 U.S. 923, 69 L. Ed. 2d 1005, 101 S. Ct. 3160.) If the search is based upon probable cause, police officers may search the entire vehicle, including the trunk. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.) Absent proba-

ble cause, however, police officers must obtain a warrant or consent to search the trunk of a vehicle which has not been lawfully impounded or whose owner has not been arrested. (*People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346.) Consent to search must be proved by clear and positive testimony which establishes that there was no duress or coercion, actual or implied; every reasonable presumption should be indulged against waiver of fundamental constitutional rights. (*People v. Shaver* (1979), 77 Ill. App. 3d 709, 396 N.E.2d 643.) When consent to search has been given, however, no more is needed. See generally *People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739.

■ ■ Since we believe the officers present at the scene of defendant's stop had probable cause to search the trunk, we do not have to consider whether consent to search the car was coerced. Probable cause is that knowledge which, based on the facts and circumstances known to the officer at the time, is sufficient to cause a reasonable person of reasonable caution to believe an offense has been committed. (*Brinegar v. United States* (1949), 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302; *People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238.) As discussed previously, the information available to the officers reasonably could have led them to suspect defendant and Rainone of the shooting. Defendant's relationship to the victim was that of a rival gang member; he was present in the victim's gang territory; he was acting nervously; he was violating traffic laws; and he had an inadequate explanation as to his proximity to the recent shooting. The officers had reasonable grounds to believe that an offense had been committed. Further, the officers knew that the perpetrators of the shooting had been seen with shotguns. In light of the foregoing facts, a search of the trunk for these shotguns was reasonable. (See *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.) We find no error in the trial court's denial of defendant's motion to suppress the evidence found in the trunk of defendant's vehicle.

■ Since we have determined that both the search and arrest were legal, we need not consider defendant's contention that the initial illegality of his arrest mandates that his statement and the lineup be suppressed.

Defendant next contends that a photograph depicting him wearing a gang sweater and making a gang hand gesture was improperly admitted into evidence. Defendant argues that the photograph was highly prejudicial and not relevant.

■ The admission of a photograph into evidence is within the sound discretion of the trial court. (*People v. Williams* (1985), 137 Ill. App. 3d 736, 484 N.E.2d 1191.) A photograph which tends to establish

facts at issue is admissible. (*People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) The inflammatory nature of a photograph is not a bar to admissibility if the photograph is probative of one or more issues or if it corroborates testimony. (*People v. Cleveland* (1986), 140 Ill. App. 3d 462, 488 N.E.2d 1276.) Moreover, evidence of gang affiliation is admissible to show motive. (*People v. Malone* (1976), 37 Ill. App. 3d 185, 345 N.E.2d 801.) The decision to admit photographic evidence will not be disturbed absent abuse of the trial court's discretion. *People v. Craig* (1977), 47 Ill. App. 3d 242, 361 N.E.2d 736.

Here, testimony during the trial indicated that the photograph accurately depicted defendant. Officer Foster testified that he had seen defendant wear such a sweater approximately 1½ months before the shooting. Foster also testified that he had seen defendant making the same hand gesture as that depicted in the photograph. Defendant's gang affiliation was at issue because of the potential link of this affiliation with motive. Accordingly, we find that the trial court did not abuse its discretion in admitting the photograph into evidence. We believe the probative value of the photograph outweighed any prejudice its admission may have engendered.

Defendant also contends that the trial court erred in admitting statements made by defendant to an assistant State's Attorney. Defendant alleges the State did not disclose the substance of these statements to defendant pursuant to discovery.

Defendant argues he was prejudiced by his surprise at the assistant State's Attorney's testimony that defendant told him of a conversation between defendant and Rainone about "getting some Two Two Boys." Defendant admits the State delivered a memo to him indicating that an oral statement had been taken, that the statement had been transcribed by a court reporter, and that the transcript was substantially the same as the oral statement but did not specifically say "getting some Two Two Boys." The trial court overruled defendant's objection to the testimony of the assistant State's Attorney and found no substantial variation between the testimony and the written statement.

A review of the record and of the written confession leads us to conclude that the trial court did not err in so ruling. In Illinois, upon written motion of defense counsel, the State must provide any written or recorded statement as well as the substance of any oral statements made by the accused, and a list of witnesses to the making and acknowledgement of such statements. (107 Ill. 2d R. 412(a)(ii).) Here, defense counsel had an opportunity to review the written state-

ment. The testimony of the witness should have come as no surprise to defendant. Moreover, were we to find that the State failed to comply with the discovery rules, absent a showing of prejudice, such noncompliance does not require reversal. (See *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) In light of the overwhelming evidence of defendant's guilt, we do not believe any failure to comply with discovery rules prejudiced defendant. Any resulting error was harmless.

Defendant's final contention is that the prosecutor made improper comments during rebuttal argument resulting in prejudice to defendant. Specifically, defendant asserts that the following statement by the prosecutor improperly shifted the burden to defendant to prove why he did not call any witnesses:

"PROSECUTOR: There were other people out there that night. And counsel just as any Attorney has subpoena power. And you can bet your bottom dollar if there was one witness out on that scene that would have helped his case, that he would have been called as defense witness.

DEFENSE COUNSEL: Judge, I'll object. I think he is shifting the burden now.

THE COURT: Objection sustained."

■■■ In the event a prosecutor makes an improper statement, any possible prejudice resulting from that statement may be cured by adequate instructions to the jury to disregard such statements. (*People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385.) Moreover, improper remarks generally will not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.

■■■ We believe defendant sustained no prejudice as a result of the prosecutor's comment. The trial court promptly sustained an objection to the comment. Further, the trial court instructed the jury to disregard any statement made which was not based on the evidence. Moreover, any error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.